IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DALLON CURTIS ROBERTSON, #238661
        Plaintiff               :

        v.                            :   CIVIL ACTION NO. RDB-04-2949

MARY ANN SAAR, *et al.*             :
        Defendants

**MEMORANDUM OPINION**

This case was initiated on September 14, 2004, when Plaintiff, a DOC prisoner then incarcerated at the Maryland Correctional Institution at Jessup ("MCI-J"),[1] filed this civil rights action pursuant to 42 U.S.C. § 1983, seeking injunctive relief requiring the DOC to provide him with appropriate treatment to alleviate ongoing damage to his liver caused by his exposure to the Hepatitis C virus ("HCV").[2] (Paper No. 1). Before the Court is a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendant Prison Health Services, Inc. ("PHS"), the contractor responsible for delivery of health care to most DOC prisons prior to July 1, 2005.[3] (Paper No. 57). For reasons to follow, the Motion, opposed by Plaintiff[4] and construed as a motion for summary judgment, is denied and the case shall go forward with counsel appointed

---

[1] Plaintiff has been transferred several times during the pendency of his lawsuit and thus has come under the care of various health care professionals. Currently he is incarcerated at the Eastern Correctional Institution at Westover ("ECI").

[2] Plaintiff also seeks compensatory and punitive damages for injury to his health allegedly caused by Defendants' failure to provide such treatment in a timely manner.

[3] PHS provided health care services to DOC prisons in Baltimore, the Jessup region, and eastern and western Maryland from July 1, 2000 through June 30, 2005. Correctional Medical Services, Inc. ("CMS") provided health care during this period to DOC facilities in the Hagerstown region. CMS took over health care services at all DOC facilities effective July 1, 2005.

[4] *See* Paper Nos. 80 and 81, and Defendant PHS's reply thereto. Paper No. 82.

to represent Plaintiff.[5]

**Background**

Hepatitis C, a viral infection transmitted through contact with infected blood, can result in a chronic condition affecting the liver.[6] Up to 30% of those exposed to Hepatitis C virus ("HCV") will recover without problems, while roughly 20% will develop cirrhosis of the liver within ten to twenty years of exposure. Another 5% of the infected population ultimately will succumb to liver cancer.

While HCV can be diagnosed using a simple blood test, more sophisticated tests are required to identify the particular genetic strain ("genotype") of the virus because different strains require different treatment regimens. Additionally, a liver biopsy is needed before committing to a course of treatment to identify the extent of liver damage. The number of hepatologists (liver specialists) available to treat the growing HCV-infected population is inadequate, and patients may wait more than six months for referral to such specialists.

Current treatment for chronic HCV, which can reduce or eliminate the virus in some instances and reduce the risk of long-term liver damage, requires the administration of a drug "cocktail" containing pegelated interferon and ribovirin drugs over a period of approximately

---

[5] A dispositive motion filed by State Defendants Saar and Price (Paper No. 9) was held in abeyance and frequent status reports were required to determine whether Plaintiff required more aggressive treatment (rather than routine monitoring) for HCV and possible other liver-related disorders. *See* Paper No. 12, Order of January 24, 2005. The Court later concluded that Plaintiff did not suffer bile duct problems or hemochromatosis and did not compel Defendants to provide treatment for these conditions. *See* Paper Nos. 21 and 22. The State Defendants, however, shall remain parties to this action, for reasons apparent herein.

[6] The information concerning the disease and the Maryland Division of Correction's ("DOC") response to prisoners afflicted with it is gleaned from the Declaration and Supplemental Declaration of Dr. Sharon Baucom, an employee of the Maryland Department of Public Safety and Correctional Services (DPSCS), filed in *Worsham v. Governor, et al.*, Civil Action No. JFM-03-628 (D. Md. 2003) and provided here as exhibits attached to Paper No. 9, a dispositive motion filed on behalf of State Defendants Saar and Price.

eighteen months. In 2003, the annual cost of treating a prisoner with these drugs was estimated between $18,000 and $20,000. Treatment is effective for roughly 40% of those individuals infected by the most common genotype of the virus; the efficacy is reduced for those who can be treated with only one drug. The treatment regimen is not recommended for patients suffering from depression, heart disease, substance abuse, or other chronic medical conditions. Additionally, treatment should be withheld from patients not likely to complete the regimen or those likely to resume illegal drug use or alcohol consumption.[7]

Authorities began to see an increasing number of HCV-infected individuals enter the nation's prisons since the mid-to-late-1990s. Maryland, however, did not provide screening or treatment for HCV prisoners (others than those who entered the DOC while already undergoing a course of treatment) until 2001. In November of 2003, a draft protocol was circulated among DPSCS medical personnel and the DOC's regional medical directors employed by the contractual health care providers. By December of 2003 cases involving seventeen prisoners were initially reviewed for consideration under the proposed protocol.

The protocol, which was the subject of the *Worsham* case, was formally adopted by the DPSCS on October 14, 2004.[8] Against this background, the Court now examines the issue of whether Plaintiff, who claims to have been infected with HCV a decade ago, is receiving

---

[7] Reinfection after incomplete treatment can lead to the development of resistant strains of HCV, and alcohol consumption impairs liver function, thus negating the effects of treatment.

[8] A consensual Order of Dismissal was entered in the case on November 18, 2005, after the parties agreed that the protocol, entitled "Infection Control Manual, Surveilliance and Treatment of Infectious Diseases, Management of Hepatitis C and HIV/HCV Co-Infection in Maryland Inmates," was constitutionally adequate, had been implemented by the DPSCS, and was funded by the Maryland General Assembly. *See Worsham* at Paper No. 62. The Order of Dismissal specifically did not preclude individual DOC prisoners from filing any action for failing to provide treatment required under the protocol. A copy of the protocol is presented in this case as an exhibit appended to the Baucom Declaration found at Paper No. 9.

constitutionally adequate medical care.

## Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *See Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Furthermore, when ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In order to state a constitutional claim for denial of medical care, Plaintiff must demonstrate that Defendant's acts (or failures to act) amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to

fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition and not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).[9]

"'[B]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "[A]n injury or condition is 'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)). In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention. *See Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (D.N. Ill. 1984) (citation omitted).

---

[9] Mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

**Analysis**

The record is unclear as to when Plaintiff was first diagnosed with HCV, but the diagnosis was known at the latest in 2002. Abnormalities found in Plaintiff's blood, dating back at least as early as August of 2002, are noted,[10] but their significance remains unknown to the Court. Despite the ongoing presence of these abnormalities, it does not appear that Defendants moved forward to evaluate whether Plaintiff was a candidate for treatment under the protocol until March of 2005, when he was seen by a psychiatrist.[11] (Paper No. 30). An August 1, 2005, progress note from chronic care clinic staff indicates that Plaintiff was waiting for a determination by the DOC as to whether he would be scheduled for a liver biopsy. (Attachment to Paper No. 32). On December 28, 2005, Plaintiff was told by clinic staff that he was not eligible for a biopsy and treatment under the protocol because there was less than 12 months remaining on his sentence.[12] (Paper No. 72).

Although it appears that an "extensive work up," including genotype testing, was performed (Paper No. 72, Exhibit 1 at 9), the Court does not know when the testing was completed, nor the genotype with which Plaintiff is infected. Thus, the Court cannot determine the length of treatment that would be required under the protocol to attempt eradication of that viral strain,[13] and whether Defendants delayed in providing the testing necessary to determine Plaintiff's suitability for treatment under the protocol. The limited medical records provided by the parties do not provide sufficient information to fully inform the Court and aid in determining whether summary judgment is

---

[10] Laboratory findings concerning Plaintiff's blood work are attached to Exhibit 1 of Paper No. 9.

[11] The results of that visit are not provided to the Court.

[12] The progress note states that Plaintiff wanted to wait until he was released from prison to begin treatment (*id.*, Exhibit 1 at 9), a conclusion which Plaintiff strongly denies. (Paper No. 80). The parties do not provide information as to when Plaintiff is likely to be released from prison.

[13] Plaintiff suggests that treatment for one genotype can be completed in 24 weeks. Paper No. 80.

appropriate in this case.[14] Accordingly, a separate Order shall issue denying Defendant's dispositive motion, appointing counsel for Plaintiff, and outlining further action to be taken in this case.

July 21, 2006  /s/
(Date)  RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[14] The bulk of the information provided concerns testing and treatment for a seizure disorder.